UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARCUS G. MCGINNIS,

   Plaintiff,

  v.

RON DAVIS, et al.,

   Defendants.

Case No. 20-cv-01695-SI

**ORDER OF DISMISSAL WITH LEAVE TO AMEND**

Re: Dkt. Nos. 1, 4

  Marcus McGinnis, an inmate at San Quentin State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983. His complaint is now before the court for review under 28 U.S.C. § 1915A. His request for appointment of counsel also is now before the court for consideration.

## BACKGROUND

  The complaint alleges the following:

  McGinnis arrived with a toothache when he entered San Quentin State Prison on June 6, 2019 to begin serving a prison sentence. He contends that defendants were slow to respond, and sometimes nonresponsive, to his complaints of pain. He also contends that defendants provided inadequate treatment for the abscessed tooth, the dry socket that developed after the tooth was extracted, and the infection(s) that developed thereafter.

  Upon arrival at San Quentin, he was given an initial health screening by Rosemary Gladden, R.N. McGinnis told nurse Gladden that he had a toothache for which he had been treated at the Napa jail and for which he urgently needed to see someone in the dental department.

  McGinnis submitted a health care services request form on June 10 asking to be seen for the dental pain. He was prescribed ibuprofen; even though he took more than prescribed, the ibuprofen

was not effective for his dental pain.

On June 13, dentist Dr. Jones did a dental screening and considered McGinnis' toothache complaint. X-rays were done. Dr. Jones showed McGinnis the small abscess at the base of the root of the tooth that was visible on the x-ray, said he would be able to save the tooth if McGinnis was not a reception-center inmate but the only option for McGinnis (as a reception center inmate) was to extract the infected tooth. Dr. Jones stated that an appointment would be scheduled but did not prescribe antibiotics or pain medication.

On June 18, McGinnis submitted another health care services request for his increasing dental pain that was not resolved with ibuprofen.

On June 20, Dr. Jones extracted the tooth. According to Dr. Jones, there were signs of infection and a small abscess at the root of the tooth. After the extraction, Dr. Jones voiced a concern that the extraction site was not bleeding and stated that blood is needed to create a blood clot to prevent dry socket. Dr. Jones put a piece of gauze in McGinnis' mouth, told him to bite down on the gauze, and sent him back to his housing unit; Dr. Jones did not prescribe antibiotics or pain medication. Thereafter, problems developed.

After the Novocain wore off several hours later, McGinnis was in "unbearable pain." Docket No. 1 at 9. At 6:00 p.m., he went "man down" (prison parlance meaning that he requested emergency medical treatment). *Id.* He was taken to the T.T.A., which functions as the prison emergency room, where the registered nurse on duty called the on-call doctor, who ordered Tylenol. McGinnis was sent back to the housing unit, where he remained bedridden for two days due to pain.

On three or four occasions on June 22, McGinnis went "man down" and was taken to the T.T.A. The registered nurse called an on-call doctor who ordered 2 tabs Tylenol # 3 for the pain at the first visit and ordered Tylenol #3 and amoxicillin at the second visit. He also was seen by a dentist who diagnosed McGinnis – who by then had "unbearable pain" and increasing swelling in his jaw – as having dry socket. That day, McGinnis told staff that the Tylenol # 3 was ineffective.

On June 23, McGinnis submitted a health care services request form for "gross swelling" and "ext[reme] unbearable pain." *Id.* at 10. He went "man down" again later that day and was taken to the T.T.A. where he encountered Pierre Salonga, R.N., who refused to treat [him], "stating there

is no sign of swelling" and no pain because pain medications had been provided. *Id.* at 11. At the time, McGinnis' main complaint was unbearable pain and gross swelling of the neck and jaw.

On June 24, Dr. Eiffert saw McGinnis in the T.T.A., discontinued the Tylenol # 3, and ordered ketorolac. Like the other pain medications, this medicine was not effective to treat the pain.

On June 26, dentist Dr. Jones saw McGinnis again. Dr. Jones discontinued the pain medications as unnecessary and admitted McGinnis probably had dry socket. Although McGinnis pleaded for Dr. Jones to reconsider the pain medications, he refused. Although McGinnis told Dr. Jones of a previous abscess that was treated successfully with penicillin, Dr. Jones ordered clindamycin. McGinnis said he was going to file an administrative appeal; this displeased Dr. Jones, who sent McGinnis back to his housing unit. When a dental assistant told the dentist that McGinnis should not leave because his blood pressure was too high, Dr. Jones said it was elevated because of the ibuprofen (even though McGinnis was not taking ibuprofen at this time). The dental assistant took McGinnis to the T.T.A., where a doctor ordered a ketorolac injection for pain.

On June 28, McGinnis complained of extreme swelling and pain. He was taken to the T.T.A. and then sent to the emergency room at Marin General Hospital, where a CT-scan was done and he was given Norco and Demerol for the pain. The CT-scan showed a submandibular abscess. I.V. clindamycin was ordered and McGinnis was sent back to San Quentin. The next day, he again went "man down" and received no new treatment.

On June 30, he went "man down" again because of extreme pain and breathing difficulties due to the swelling. He was taken to the emergency room at Marin General Hospital, where he received emergency surgery, pain medications, blood tests and another CT-scan. A drain tube was placed in his neck to drain the abscess. He was returned to the prison the next day, where he was held in T.T.A. until seen by the dental department. A doctor ordered a liquid diet for a week due to McGinnis' inability to eat normally.

McGinnis was seen by Dr. Luque, an outside oral surgeon, on July 2, who decided to leave the drain in place until July 8. When McGinnis returned to San Quentin, a doctor told him the infection had migrated to the bloodstream and ordered ceftriaxone injections for several days. On July 8, Dr. Luque removed the drain tube from McGinnis' neck.

3

The next day, McGinnis saw Dr. Jones and told him of possible infection due to the presence of pus at the extraction site. Dr. Jones refused to look at or treat the problem and told him to return to the medical department or Dr. Luque for treatment.

McGinnis was seen several times by health care providers over the next several weeks for the still-draining wound that had not fully healed. Eventually, on August 23, he was sent to the San Joaquin Hospital, where a CT-scan was taken that the doctor stated showed no abscess but that the doctor could not rule out osteomyelitis, a bone infection.

At the beginning of October, swelling suddenly returned and a doctor or dentist sent him to Dr. Luque. Dr. Luque ordered a CT-scan and diagnosed osteomyelitis of the jawbone that needed surgery. Dr. Luque performed the surgery to remove the infected bone at an outside hospital on October 15, and ordered six weeks of I.V. antibiotics through a P.I.C. line that was placed in McGinnis' arm. The antibiotics were completed and the P.I.C. line was removed on November 27.

Dentist Dr. Cerecedes "failed to properly investigate and take proper actions to discipline those involved or intervene with adequate medical treatment" in response to McGinnis' inmate appeals. *Id.* at 17. Dentists Dr. Cerecedes, Clark, and Mettu, and registered nurses Rosemary Gladden and Pierre Salonga knew or should have known that McGinnis was suffering from a serious medical need when they examined him on unstated dates yet failed to intervene and allowed the inadequate treatment to continue. *Id.* at 17, 21. Prison warden Ron Davis and CDCR Director/Commissioner Connie Gipson failed to adequately supervise the health care personnel at the prison, *Id.* at 18, 23.

**DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *See Balistreri v.* Pacifica *Police Dep't*, 901 F.2d 696,

4

1  699 (9th Cir. 1990).

2        To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

6        Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's prohibition of cruel and unusual punishment.  *See Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).  To establish an Eighth Amendment claim based on inadequate medical care, a prisoner-plaintiff must show: (1) a serious medical need, and (2) deliberate indifference thereto by a defendant.  Deliberate indifference may be demonstrated when prison officials deny, delay or intentionally interfere with medical treatment, or it may be inferred from the way in which prison officials provide medical care.  *See McGuckin v. Smith*, 974 F.2d 1050, 1062 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Medical needs include dental care needs.  *See Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989).

16        Liberally construed, the complaint states a claim against defendants Dr. Earl Jones and nurse Salonga for deliberate indifference to McGinnis' dental/medical needs.  Dr. Jones allegedly failed to adequately treat the tooth pain and infection(s) during the relevant time.  Nurse Salonga allegedly refused to treat McGinnis on June 24.  Had McGinnis listed only these two defendants, the court would be ordering service of process today.  An amended complaint is necessary because he has not included adequate allegations against the six other named defendants, i.e., warden Davis, CDCR Director Gipson, Dr. Cerecedes, Dr. Clark, Dr. Mettu, and nurse Gladden.

23        A claim is not stated against warden Davis and CDCR Director Gipson, whose alleged misdeeds consisted of failing to adequately supervise the health care personnel at San Quentin. There is no respondeat superior liability under § 1983, i.e. no liability under the theory that one is responsible for the actions or omissions of another, such as an employee. *See Board of Cty. Comm'rs. of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1139, 1144 (9th Cir. 2012). These defendants do not have liability based on the fact that they are in charge

of the prison, correctional system, or alleged wrongdoer. A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). McGinnis' generalized allegations that they failed to supervise is inadequate to hold either of them liable.

A claim is not stated against Dr. Cerecedes, Dr. Clark, and Dr. Mettu. The complaint does not allege any particulars about these dentists' actions and alleges only generally that they examined him in "on numerous occasions." Docket No. 1 at 17. The complaint does not identify the dates on which any of these people saw him, does not describe what each of these people did wrong, and the 160+ pages of attachments to the complaint do not include treatment records from these dentists.

One attachment to the complaint shows that Dr. Cerecedes signed an institutional-level response to an inmate appeal on September 4, 2019, by which time the dental/medical problem had been addressed. A claim is not stated against Dr. Cerecedes based on her response to McGinnis' inmate appeal. There is no federal constitutional right to a prison or jail administrative appeal or grievance system for California inmates. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). An incorrect decision on a grievance or an administrative appeal or failure to handle it in a particular way therefore does not amount to a violation of his right to due process. The claim regarding the handling of the inmate appeal therefore is dismissed without leave to amend.

A claim is not stated against nurse Gladden. She allegedly did the initial health care screening on June 6 and learned of McGinnis' request to be seen by the dental department due to tooth pain. According to her notes, she told McGinnis the procedure to request dental and medical care. Docket No. 1-4 at 2. McGinnis followed that procedure and submitted a health care request form on June 10, received pain medication (ibuprofen), was seen by a nurse on June 12, and was seen by a dentist on June 13. Having given the inmate instructions on how to request medical and dental care (which he followed four days later), it does not appear that this brief delay in McGinnis seeing a dentist reflects deliberate indifference by nurse Gladden.

Leave to amend is granted so that McGinnis may attempt to state a claim against warden Davis, CDCR Director Gipson, Dr. Cerecedes, Dr. Clark, Dr. Mettu, and nurse Gladden. In his amended complaint, he must link defendants to his claims by alleging facts showing the basis for liability for each individual defendant. He should not refer to them as a group (e.g., "the defendants"); rather, he should identify each involved defendant by name and link each of them to his claim by explaining what each defendant did or failed to do that caused a violation of his constitutional rights. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right). A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

Finally, McGinnis has moved for appointment of counsel to represent him in this action. A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *See id.* Neither of these factors is dispositive and both must be viewed together before deciding on a request for counsel under § 1915(e)(1). Exceptional circumstances are not present. There appears to be at most a modest likelihood of success on the merits of the Eighth Amendment claim that requires a defendant to act with the mental state of deliberate indifference, given the records showing that McGinnis received various pain medications, antibiotics, examinations by health care providers in prison, referrals to an outside oral surgeon, and trips to outside hospitals during the relevant time. Additionally, McGinnis has been able to adequately articulate his claim *pro se*. The motion for appointment of counsel is DENIED. Docket No. 4.

**CONCLUSION**

The complaint is dismissed with leave to amend. Plaintiff must file an amended complaint that complies with the directions in this order no later than **September 4, 2020**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.") If plaintiff does not file an amended complaint, all defendants other than Dr. Jones and nurse Salonga will be dismissed and the action will go forward against those two defendants with the complaint being the operative pleading.

The motion for appointment of counsel is DENIED. Docket No. 4.

**IT IS SO ORDERED**.

Dated: July 17, 2020

SUSAN ILLSTON
United States District Judge

8